UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
TAREK YOUSSEF SALEH,

                      Plaintiff,

       - against -

MERRICK GARLAND, *Attorney General,
U.S. Department of Justice*, CHRISTOPHER
A. WRAY, *Director, Federal Bureau of
Investigation*, ALEJANDRO MAYORKAS,
*Secretary, U.S. Department of Homeland
Security*, UR JADDOU, *Director, U.S.
Citizenship and Immigration Services*,
THOMAS CIOPPA, *District Director, USCIS
New York District Office*, SUSAN
QUINTANA, *USCIS New York City Field
Office Director*, and GINA PASTORE,
*Brooklyn Field Office Director*,

                      Defendants.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
21-CV-5998 (PKC)

PAMELA K. CHEN, United States District Judge:

      Plaintiff Tarek Youssef Saleh, proceeding *pro se*, commenced this case against Merrick Garland, Christopher A. Wray, Alejandro Mayorkas, Ur Jaddou, Thomas Cioppa, Susan Quintana, and Gina Pastore (collectively, "Defendants") on October 28, 2021, seeking *de novo* review of the denial of his application for naturalization and challenging the United States Citizenship and Immigration Services' ("USCIS") Controlled Application Review and Resolution Program ("CARRP").  Defendants move to dismiss, asserting lack of subject matter jurisdiction and failure to state a claim.  For the reasons discussed here, Defendants' motion is granted in part and denied in part.[1]

---

[1] Plaintiff's request for oral argument (Dkt. 17) is denied as unnecessary.

1

## BACKGROUND[2]

Plaintiff is a citizen of Egypt and a lawful United States permanent resident. (Complaint "Compl."), Dkt. 1, ¶¶ 18, 74, 159). Plaintiff obtained his permanent resident status after a protracted administrative adjudication process and litigation in federal courts. (*Id.* ¶¶ 79, 83, 96–110); *see also Saleh I*, 2021 WL 1640449, at *2 ("Following protracted litigation in federal court and immigration court, Plaintiff's Form I-485 application was granted on August 15, 2013, on which date Plaintiff became a lawful resident of the United States.").

Plaintiff applied to become a naturalized United States citizen on May 18, 2018, by filing Form N-400 with USCIS. (Compl., Dkt. 1, ¶¶ 3, 111.) Plaintiff's application was not adjudicated for over a year, a delay Plaintiff attributes to USCIS subjecting him to CARRP—a policy pursuant to which applicants undergo an "extreme vetting" process when seeking immigration benefits. (*Id.* ¶¶ 118, 122–23, 125); *see also Saleh I*, 2021 WL 1640449, at *2. Plaintiff thus commenced an action in the Southern District of New York on December 26, 2019. (Compl., Dkt. 1, ¶¶ 3, 124). On August 31, 2020, while that case was pending, USCIS denied Plaintiff's Form N-400 application finding that Plaintiff failed to satisfy the residency and good moral character requirements of the Immigration and Nationality Act ("INA"). (*Id.*, ¶¶ 4, 5, 125.) The next day, Plaintiff administratively appealed the denial by filing a request for a hearing ("Form N-336"). (*Id.* ¶¶ 5, 126.) USCIS scheduled Plaintiff's Form N-336 hearing for February 24, 2021. *Saleh I*,

---

[2] In addition to deriving the relevant facts from Plaintiff's Complaint, the Court takes judicial notice of two prior decisions (and the public dockets in those cases) closely related to this case: *Saleh v. Pastore et al.*, 19-CV-11799 (KPL), 2021 WL 1640449, at *1 (S.D.N.Y. Apr. 27, 2021) ("*Saleh I*") and *Saleh v. Pastore et al.*, No. 21-1073, 2021 WL 4978574, at *1 (2d Cir. 2021) (summary order) ("*Saleh II*"). *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (courts may "take judicial notice of relevant matters of public record"); *see also Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) ("It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including case law and statutes.").

2021 WL 1640449, at *4.  Plaintiff "purposefully and intentionally" did not attend his Form N-336 hearing because he was "pretty sure without any doubt [that] USCIS lost the jurisdiction and the power to adjudicate his application." *Id.* (brackets in original).  On April 27, 2021, the Southern District of New York dismissed Plaintiff's Form N-400 claim as moot and dismissed the remaining claims for lack of subject matter jurisdiction, citing Plaintiff's failure to exhaust his administrative remedies.  *Id.* at *8, 10.  Plaintiff appealed to the Second Circuit, which affirmed in a summary order on October 27, 2021.  *See Saleh II*, 2021 WL 4978574, at *1.  While the appeal before the Second Circuit was pending, USCIS issued its final decision on Plaintiff's naturalization application, vacating its prior denial of Plaintiff's Form N-400, but denying naturalization on different grounds.  (Compl., Dkt. 1, ¶¶ 5, 128.)  USCIS advised Plaintiff that the "decision constitute[d] a final administrative denial of [Plaintiff's] naturalization application," and also advised Plaintiff and the Second Circuit that Plaintiff could "request judicial review" of the denial by filing a petition in this District.  *See Saleh II*, Dkt. 52-2, at 6.[3]

On October 28, 2021, Plaintiff commenced the present action pursuant to 8 U.S.C. § 1421(c)[4], seeking *de novo* review of the denial of his naturalization application.  (Compl., Dkt. 1.) Plaintiff also challenges CARRP and any other successor "extreme vetting" program, and their application to him and other Form N-400 applicants.  Plaintiff seeks a declaration that (1) his

---

[3] As explained by USCIS, judicial review is appropriate in this District, as opposed to the Southern District of New York, where Plaintiff's earlier petition was adjudicated, because Plaintiff resides in Staten Island.  *See Saleh II*, Dkt. 52-1, at 1.

[4] Section 1421(c) provides, in relevant part:  "A person whose application for naturalization . . . is denied, after a hearing before an immigration officer . . ., may seek review of such denial before the United States district court for the district in which such person resides. . . . Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application."  8 U.S.C. § 1421(c).

3

naturalization application was reviewed with unreasonable delay, (2) the USCIS policy of treating an applicant's multiple absences of less than six months from the United States as potentially breaking an applicant's continuous residence ("multiple absences policy") violates the INA and the Administrative Procedure Act ("APA"), and (3) CARRP is unlawful because it violates the Naturalization Clause of the United States Constitution, Fifth Amendment to the United States Constitution, the INA, and the APA.  (*Id.* at 76.)  Plaintiff also seeks injunctive relief "rescinding" CARRP and enjoining USCIS from applying CARRP and the multiple absences policy to any Form N-400 applicants.  (*Id.* at 77.)

On December 27, 2021, Defendants filed a motion for a pre motion conference seeking to file a motion to dismiss.  (Dkt. 9.)  Plaintiff filed a response, arguing that Defendants' motion to dismiss should be denied.  (Dkt. 11.)  The Court denied Defendants' motion for a pre motion conference as unnecessary and set a briefing schedule for the motion to dismiss.  (01/05/2022 Docket Order.)  Plaintiff sought an expedited briefing schedule citing his "need to get marri[ed] overseas and apply for my wife as I am single, no kids until now and my age is about 59 years old."  (Dkt. 12.)  The Court granted Plaintiff's request for expedited briefing and set an amended briefing schedule.  (01/07/2022 Docket Order.)  Plaintiff subsequently sought leave to file excess pages for a combined filing that would include his opposition to Defendants' motion to dismiss and his own motion for summary judgment. (Dkt. 14.)  The Court denied Plaintiff's request to file excess pages but construed it as additionally requesting leave to file a motion for summary judgment; that request was granted, and an amended briefing schedule issued.  (02/02/2022 Docket Order.)  However, upon further reviewing the record, the Court concluded that Plaintiff's summary judgment motion was premature and directed the parties to abide by the earlier briefing schedule.  (02/03/2022 Docket Order; *see also* 02/16/2022 Docket Order ("[T]he Court reiterates that

4

Plaintiff's motion for summary judgment is premature at this time.").) Defendants' motion to dismiss was fully briefed on February 25, 2022. (*See* Dkts. 24, 25, 26.)

On June 14 and 15, 2022, parties filed letters regarding the Second Circuit's decision issued on June 14, 2022—*Donnelly v. Controlled Application Review & Resolution Program Unit*, 37 F.4th 44 (2d. Cir. 2022)—and its effect on the present action. (Dkts. 30, 31.) In his letter, among other things, Plaintiff requested a stay of the proceedings to allow him another opportunity to exhaust his administrative remedies and appear at his Form N-336 hearing. (Dkt. 31.) The Court urged Defendants to consider this request. (June 17, 2022 Docket Order.) While the Court was awaiting response from Defendants, Plaintiff filed a motion to expedite the Court's decision on Defendants' motion to dismiss arguing that "the delay of issuing the opinion and the decision destroy my future to try to get a wife from overseas, observing my age is almost 60 years, no wife, no kids." (Dkt. 32.) On July 1, 2022, Defendants informed the Court that they were declining Plaintiff's request for another opportunity to exhaust his administrative remedies. (Dkt. 33.) On the same day, the Court issued an order denying Plaintiff's motion to expedite the Court's decision and advising the parties that it would take their letters regarding the effect of *Donnelly* under advisement together with the parties' briefing on Defendants' motion to dismiss.[5] (July 1, 2022 Docket Order.)

---

[5] The Court's order also included a warning to Plaintiff, based on a phone call received by chambers that day wherein Plaintiff raised his voice and demanded to speak with Judge Chen directly, that any further harassment of chambers staff and needless calls would result in sanctions. (07/01/2022 Docket Order.) In a July 3, 2022, letter, Plaintiff argued that the Court misrepresented the call and that Plaintiff had instead placed a "polite" call. (*See generally* Dkt. 35.) The Court does not accept Plaintiff's revisionist version of the phone call.

5

**STANDARD OF REVIEW**

Defendants move to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

**I.      Rule 12(b)(1)**

Rule 12(b)(1) allows a defendant to move to dismiss a complaint for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). In reviewing a motion to dismiss under Rule 12(b)(1), courts must "accept as true all material factual allegations in the complaint," *Shipping Fin. Serv. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) (citation omitted), while refraining from "drawing from the pleadings inferences favorable to the party asserting [jurisdiction]," *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (citation omitted). The party "asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "Notwithstanding the liberal pleading standard afforded *pro se* litigants, federal courts are courts of limited jurisdiction and may not preside over cases if subject matter jurisdiction is lacking." *Chestnut v. Wells Fargo Bank, N.A.*, No. 11-CV-3369 (JS) (ARL), 2012 WL 1657362, at *3 (E.D.N.Y. May 7, 2012) (citing *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000)). District courts may consider evidence outside of the pleadings when resolving a motion to dismiss under Rule 12(b)(1). *See Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citing *Makoraova*, 201 F.3d at 113)). "The task of the district court is to determine whether the [p]leading alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (cleaned up).

**II.     Rule 12(b)(6)**

Rule 12(b)(6) allows a defendant to move to dismiss a complaint for failure to state a claim on which relief may be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under

Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). "In addressing the sufficiency of a complaint, [the Court] accept[s] as true all factual allegations and draw[s] from them all reasonable inferences; but [the Court is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). Courts "liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017).

## DISCUSSION

### I.  Plaintiff's § 1421(c) Claim (Counts I and VII)

Plaintiff's § 1421(c) claim is not explicitly asserted in any of Plaintiff's numbered causes of action. However, because Plaintiff seeks review under the INA in Count I and seeks *de novo* review in Count VII, the Court construes those two counts to be asserting Plaintiff's § 1421(c) claim. Defendants seek to dismiss these claims pursuant to Rule 12(b)(6), based on Plaintiff having failed to exhaust his administrative remedies by not attending his Form N-336 hearing.

The parties agree that Plaintiff did not attend his Form N-336 hearing. As the Second Circuit recently held, this amounts to failure to exhaust administrative remedies and prevents

7

Plaintiff from raising his § 1421(c) claim because "§ 1421(c) is a mandatory claim-processing rule." *Donnelly*, 37 F.4th at 53. However, because "[o]bjections based on nonjurisdictional claim-processing rules may be waived or forfeited," *id.* at 54 (quoting *In re Indu Craft, Inc.*, 749 F.3d 107, 112 n.7 (2d Cir. 2014) (brackets in original)), the parties dispute whether Defendants properly preserved the objection, having waited until after Plaintiff filed the instant Complaint to raise it.

"The terms waiver and forfeiture—though often used interchangeably by jurists and litigants—are not synonymous." *Hamer v. Neighborhood Hous. Servs. of Chicago*, 138 S. Ct. 13, 17 n.1 (2017). "Forfeiture is the failure to make the timely assertion of a right; waiver is the intentional relinquishment or abandonment of a known right." *Id.* (brackets omitted). Defendants have asserted an objection based on the claim-processing rule in their motion and therefore did not intentionally waive a known right. However, despite prior litigation, Defendants did not raise their objection until after Plaintiff filed this case. "[M]andatory claim-processing rules may be forfeited if the party asserting the rule waits too long to raise the point." *Manrique v. United States*, 137 S. Ct. 1266, 1272 (2017) (internal quotation marks omitted)). Thus, the sole question here is whether Defendants "forfeited [their] right to assert" that Plaintiff's refusal to attend his Form N-336 hearing bars his § 1421(c) claim "by failing to raise the issue" on two prior occasions: USCIS's final adjudication of Plaintiff's naturalization application and previous related litigation. *Kontrick v. Ryan*, 540 U.S. 443, 458 (2004).[6] Plaintiff argues that Defendants' prior statements demonstrate their concession that Plaintiff had exhausted his administrative remedies. The Court agrees. As discussed, on June 24, 2021, USCIS issued its final decision denying Plaintiff's naturalization application. USCIS advised Plaintiff that the "decision constitute[d] a final administrative denial

---

[6] To be sure, "this issue easily could have been avoided" "[b]ut unfortunately . . . the government has chosen to stand firm in enforcing the [exhaustion] requirement in this matter." *United States v. Bess*, 455 F. Supp. 3d 53, 59 (W.D.N.Y. 2020).

8

of [Plaintiff's] naturalization application" and that Plaintiff could "request judicial review" of the denial by filing a petition in this District.  *See Saleh II*, Dkt. 52-2, at 6.  While appearing before the Second Circuit, government counsel reiterated this in a letter that advised the court that Plaintiff's naturalization application had been denied, that the denial "complete[d] the administrative adjudication of [Plaintiff's] naturalization application," and that Plaintiff could "now seek judicial review of USCIS's determination pursuant to 8 U.S.C. § 1421(c)."  *See Saleh II*, Dkt. 52-1, at 1.

Defendants have offered no explanation to justify their late objection except that these prior statements are "boilerplate" and irrelevant because Plaintiff's "failure to attend his hearing was not at issue" in the prior litigation.  (Defendant's Memorandum of Law in Support of Motion to Dismiss ("Def. Mem."), Dkt. 24-1, at 9; Defendant's Reply Memorandum ("Def. Reply"), Dkt. 26, at 6.)  That argument is disingenuous.  Although Plaintiff's refusal to attend his Form N-336 hearing may not have been at the center of Plaintiff's earlier case, it clearly was an issue litigated by the parties.  In *Saleh I*, Plaintiff sought an order from the Southern District of New York "directing USCIS to hold a hearing on his Form N-336 application within the 180-day statutory period for doing so," which USCIS opposed because Plaintiff's hearing had been scheduled.  *Saleh I*, 2021 WL 1640449, at *4.  The district court denied Plaintiff's motion, *id.*, at *7, and "inform[ed] him that failure to attend could result in further delays in his case," *Saleh II*, 2021 WL 4978574, at *3. After the date for Plaintiff's administrative hearing had passed, Plaintiff informed the court "that he had 'purposefully and intentionally' forgone his scheduled Form N-336 hearing, as he was 'pretty sure without any doubt [that] USCIS lost the jurisdiction and the power to adjudicate his application.'"  *Saleh I*, 2021 WL 1640449, at *4.  The court found that Plaintiff had failed to exhaust his administrative remedies because, among other things, Plaintiff did "not demonstrate[]

9

that his application [was] denied pursuant to a hearing on his Form N-336 application." *Id.* at 10. The Second Circuit affirmed. *See Saleh II*, 2021 WL 4978574, at *2.

Having previously administratively adjudicated Plaintiff's naturalization application on the merits to its conclusion, litigated closely related issues in federal courts, and advised Plaintiff (and the Second Circuit) that he could now seek review in this Court—all while fully aware that Plaintiff did not appear at his Form N-336 hearing—Defendants have waited too long to argue that Plaintiff failed to exhaust his administrative remedies. Defendants have thus forfeited their claim-processing rule objection to Plaintiff's § 1421(c) claim. *See Fort Bend Cnty., Texas v. Davis*, 139 S. Ct. 1843, 1848 (2019) (defendant forfeited its argument that plaintiff failed to exhaust administrative remedies because defendant "did not raise it until after an entire round of appeals all the way to the Supreme Court." (internal quotation marks omitted)); *see also Eberhart v. United States*, 546 U.S. 12, 19 (2005) (because the government failed to raise a mandatory claim-processing defense "until after the District Court had reached the merits, it forfeited that defense."). Defendants' motion to dismiss Plaintiff's § 1421(c) claim (Counts I and VII) for failure to state a claim is therefore denied.[7]

## II.     Remaining Claims (Counts II-VI)

Defendants argue that all of Plaintiff's CARRP-related claims must be dismissed pursuant to Rule 12(b)(1) for lack of standing because Plaintiff cannot demonstrate injury-in-fact and traceability. Defendants' argument appears to be based on their conclusion that Plaintiff's allegations regarding USCIS subjecting him to CARRP are "speculative and conclusory." (Def. Mem., Dkt. 24-1, at 11.) But the Complaint—which is detailed and describes Plaintiff's lengthy

---

[7] Defendants also argue that Plaintiff's failure to exhaust his administrative remedies is a jurisdictional bar to his claims. Those arguments are now precluded by *Donnelly*. 37 F.4th at 54.

history with USCIS and other government agencies—certainly contains enough factual allegations to survive a motion to dismiss. This is especially true given that the Court must accept the allegations in the complaint as true and the allegedly secretive nature of CARRP makes it virtually impossible for an applicant to determine with any certainty that he is in fact subject to it. *See DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1248 (2d Cir. 1987) ("[W]here . . . information needed to fill out plaintiff's complaint lies peculiarly within the opposing parties' knowledge, the general rule disfavoring allegations founded upon belief ought not to be rigidly enforced.").

Defendants further argue that even if Plaintiff suffered harm from CARRP, the Court cannot fashion a remedy "when any alleged delay" of Plaintiff's naturalization application "has ended and USICS [has] reached a decision." (Def. Mem., Dkt. 24-1, at 11.) But Plaintiff does not challenge CARRP solely based on the delay in USCIS adjudicating his Form N-400 application; Plaintiff also challenges the CARRP "extreme vetting" process applied by USCIS to adjudicate his application, which he asserts resulted in the final denial of his naturalization application. *See Jafarzadeh v. Nielsen*, 321 F. Supp. 3d 19, 33 (D.D.C. 2018) ("This is a case in which the claimed injury arises from an alleged failure on the part of [defendants] to adhere to a prescribed process in adjudicating the plaintiff's" application. (internal quotation marks omitted)). The Court *can* redress these injuries by finding that CARRP and its application to Plaintiff are unlawful.

Defendants next attack certain claims on various separate grounds. The Court addresses each in turn. First, Defendants argue that Plaintiff's APA claims must be dismissed pursuant to Rule 12(b)(1) because § 1421(c) is an adequate remedy to challenge CARRP and its application. (Def. Mem., Dkt. 24-1, at 11–12.) The Court agrees. The APA provides for judicial review of a

11

"final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. "Section 1421(c) offers an expansive form of judicial review through which [p]laintiffs [can] raise systemic challenges . . . ." *Moya v. United States Dep't of Homeland Security*, 975 F.3d 120, 127 (2d Cir. 2020). Under section 1421(c), the "district court review[s] an agency decision de novo and make[s] its own findings of fact." *Chan v. Gantner*, 464 F.3d 289, 291 (2d Cir. 2006). This encompasses "systemic constitutional or statutory challenges to the naturalization process," and "the district court has the factfinding and record-developing capabilities to create an adequate record as to the pattern of systemic violations." *Moya*, 975 F.3d at 127 (internal quotation marks omitted); *see also Elgin v. Dep't of Treasury*, 567 U.S. 1, 19 (2012) (holding that plaintiffs could not circumvent an administrative review scheme that "fully accommodates [their] potential need to establish facts relevant to [their] constitutional challenge"). Accordingly, Plaintiff's claims brought under the APA (Counts III, IV, V,[8] and VI) are dismissed with prejudice.

---

[8] Plaintiff's procedural due process claim is asserted under the APA and is therefore dismissed together with the other APA claims. Moreover, courts are divided on whether applicants have a liberty or property interest in seeing their immigration applications adjudicated pursuant to a specific procedure, and the Second Circuit has not decided the issue yet. *Compare Ching v. Mayorkas*, 725 F.3d 1149, 1155 (9th Cir. 2013) ("The decision of whether to approve the I-130 petition is a nondiscretionary one because determinations that require application of law to factual determinations are nondiscretionary." (citations and internal quotation marks omitted)), and *Shoaibi v. Mayorkas*, 20-CV-7121 (FPG), 2021 WL 4912951, at *6 (W.D.N.Y. Oct. 21, 2021) ("[O]nce Congress—or, in this case, its delegee, USCIS—sets forth a process for adjudicating immigration decisions, it must, at the least, follow that process. In other words, it is not that Shoaibi is *entitled* to a grant of his I-130 Petition, but that he is entitled to a *fair adjudication* of the I-130 Petition.") (emphasis in original), and *Wagafe*, 2017 WL 2671254, at *8 ("Here, Plaintiffs allege that all the statutory requirements have been complied with, and the application of CARRP's extra-statutory requirements deprives Plaintiffs of the right to which they are entitled. This is sufficient to allege a violation of due process."), *with Parella v. Johnson*, 15-CV-863 (LEK) (DJS), 2016 WL 3566861, at *7 n.7 (N.D.N.Y. Jun. 27, 2016) (no protected liberty interest "[b]ecause Plaintiff is not entitled to approval of his I-130 petition, and in fact is barred from approval in the absence of discretionary relief from the Secretary."), *and Jafarzadeh v. Duke*, 270 F. Supp. 3d 296, 313 (D.D.C. 2017) ("[T]he [c]ourt has not found any support for the proposition that [an I-130 applicant] has a constitutionally protected liberty or property interest in his application being

However, because the Court can decide Plaintiff's challenges to CARRP based on the Court's *de novo* review pursuant to § 1421(c), and because Plaintiff's constitutional claims survive as discussed below, Plaintiff's claims for declaratory and injunctive relief survive as well. *See Ahmed v. Mayorkas*, No. 21-CV-362 (GLS), 2022 WL 1567291, at *1 n.4 (N.D.N.Y. May 18, 2022) ("[B]ecause [plaintiff] has an independent source of jurisdiction under Section 1421(c), his claim for declaratory relief cannot be dismissed under Fed. R. Civ. P. 12(b)(1).").

Second, Defendants argue that Plaintiff cannot rely on the Naturalization Clause—Article I, Section 8, Clause 4 of the U.S. Constitution—otherwise known as the "uniformity requirement," because that clause does not grant a private right of action and, even if CARRP violated that clause, Congress, not Plaintiffs, would be the injured party. Other district courts have recently rejected this argument. For example, in *Wagafe v. Trump*, the district court found that plaintiffs have standing to challenge CARRP as "an extra-statutory, unlawful, and unconstitutional program" applied to the adjudication of their naturalization applications. No. C-17-0094 (RAJ), 2017 WL 2671254, at *1, *12 (W.D. Wa. Jun. 17, 2017). In another suit challenging CAARP, the district court in Washington, D.C. found that "plaintiffs had standing to assert a violation of the Naturalization Clause because they suffered injury from having to undergo additional requirements not imposed by Congress." *Kirwa v. United States Dep't of Defense*, 285 F. Supp. 3d 257, 273 (D.D.C. 2018). Similarly, in *Jafarzadeh*, the plaintiffs, who were lawful permanent residents seeking to adjust their status to U.S. citizenship, sought "invalidation of CARRP and a new adjudication free of CARRP." 321 F. Supp. 3d at 26. The district court found the government's claim that "only Congress would be injured by" a violation of the Naturalization Clause "odd"

---

adjudicated in accordance with the law, given that the ultimate determination of whether his application will be granted is discretionary."). The Court does not need to reach that issue here.

13

because "[h]istory provides a list as long as one's arm of cases in which private parties alleged injuries sufficient to bring separation of powers claims—and, indeed, often obtained relief." *Id.* at 35 (collecting cases). The Court finds the reasoning of *Wagafe*, *Kirwa*, and *Jafarzadeh* to be persuasive. Defendants' motion to dismiss the Naturalization Clause (Count II) claim is therefore denied.

## CONCLUSION

For the reasons stated in this Memorandum and Order, Defendants' motion to dismiss is granted in part and denied and in part. Plaintiff's claims in Counts I, II, and VII may proceed, along with his requests for declaratory judgment and injunctive relief relating to his § 1421(c) claims. All other claims are dismissed with prejudice.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 28, 2022
       Brooklyn, New York