UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
TAREK YOUSSEF SALEH,

       Plaintiff,

   - against -

MERRICK GARLAND, Attorney General,
U.S. Department of Justice; CHRISTOPHER
A. WRAY, Director, Federal Bureau of
Investigation; ALEJANDRO MAYORKAS,
Secretary, U.S. Department of Homeland
Security; UR JADDOU, Director, U.S.
Citizenship and Immigration Services;
THOMAS CIOPPA, District Director, USCIS
New York District Office; SUSAN
QUINTANA, USCIS New York City Field
Office Director; and GINA PASTORE,
Brooklyn Field Office Director,

       Defendants.
---------------------------------------------------------x

**MEMORANDUM & ORDER**
21-CV-5998 (PKC) (LB)

PAMELA K. CHEN, United States District Judge:

  Plaintiff Tarek Youssef Saleh, proceeding *pro se*, brought this case against Defendants Merrick Garland, Christopher A. Wray, Alejandro Mayorkas, Ur Jaddou, Thomas Cioppa, Susan Quintana, and Gina Pastore (collectively, "Defendants") on October 28, 2021, seeking *de novo* review of the denial of his naturalization application and challenging both the United States Citizenship and Immigration Services' ("USCIS") Controlled Application Review and Resolution Program ("CARRP") and multiple absences policy ("MAP").  On September 28, 2022, Defendants' motion to dismiss was granted in part and denied in part.  Then, following Plaintiff's naturalization on April 7, 2023, the Court dismissed Plaintiff's remaining claims as moot on May 11, 2023.  Plaintiff now moves for reconsideration of the final dismissal and for recovery of costs. For the reasons discussed here, Plaintiff's motion is denied in its entirety.

1

# BACKGROUND[1]

## I. Permanent Resident Application

Plaintiff is a citizen of Egypt who has resided in the United States since 1998 and has worked primarily as an Imam since his arrival. (Compl., Dkt. 1, ¶¶ 18, 75, 161.) In 2003, Plaintiff submitted an I-485 application for permanent resident status. (*Id.* ¶ 122.) On numerous instances while his I-485 application was pending between 2003 and 2008, the FBI solicited information from Plaintiff about his suspected ties to terrorism (*id.* ¶¶ 79–80), which, according to Plaintiff, are limited to a "distant relative [who was] the third [highest ranking] leader of Al-Qaeda in Afghanistan" (*id.* ¶ 79), with whom Plaintiff claims to have had no contact since 1990 (*id.* ¶ 211). FBI agents allegedly communicated to Plaintiff on multiple occasions that the approval of his I-485 application depended on his cooperation with government efforts to pursue terrorist suspects abroad. (*E.g.*, *id.* ¶¶ 80, 90, 93.) Nevertheless, Plaintiff declined the government's requests but allegedly made clear that he "condemns Al-Qaeda's terrorist and inhumane activities" (*id.* ¶ 80) and also gave the FBI "his opinion on how to deal with Al-Qaeda" on multiple occasions (*id.* ¶ 78). In 2009, six years after Plaintiff had applied for permanent resident status, USCIS denied his I-485 application. (*Id.* ¶ 60.) Plaintiff then promptly challenged the denial in immigration court, and after more than four years of litigation, in 2013, the immigration court awarded him permanent resident status. (*Id.* ¶¶ 99 (challenge), 109 (relief awarded).)

---

[1] In addition to deriving the relevant facts from Plaintiff's Complaint, the Court takes judicial notice of two prior decisions (and the public dockets in those cases) closely related to this case: *Saleh v. Pastore*, 19-CV-11799 (KPF), 2021 WL 1640449, at *1 (S.D.N.Y. Apr. 27, 2021) ("*Saleh I*") and *Saleh v. Pastore*, No. 21-1073, 2021 WL 4978574, at *1 (2d Cir. Oct. 17, 2021) (summary order) ("*Saleh II*"). *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (explaining that courts may "take judicial notice of relevant matters of public record"); *see also Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) ("It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including case law and statutes.").

## II. Naturalization Application

Similar to Plaintiff's path to permanent residency, Plaintiff's path to naturalization has been lengthy and contested. Plaintiff commenced the process by submitting an N-400 application to USCIS in May 2018. (*Id.* ¶ 3.) The agency did not take any adjudicatory action on that application until December 2019. (*See id.*) Plaintiff alleges that the delay resulted from the inappropriate subjection of his application to CARRP, which he describes as an "extreme vetting" process that subjects individuals deemed potential national security threats—predominantly Muslims—to "heightened, generally insurmountable" reviews that effectively ensure the indefinite delay or outright denial of their immigration-related applications. (*Id.* ¶ 2.)

On December 26, 2019, Plaintiff commenced an action in the Southern District of New York, seeking to compel the adjudication of his N-400 application and additionally challenging CARRP under the Immigration and Nationality Act ("INA"), Administrative Procedure Act ("APA"), and United States Constitution. *Saleh I*, 2021 WL 1640449, at *2. On August 31, 2020, while the case was underway, USCIS issued a denial of Plaintiff's application, citing Plaintiff's multiple absences spent in Morocco that amounted to "approximately 903 days between 2016 and the end of 2018." *Id.* The court held that, since USCIS had adjudicated Plaintiff's N-400 application, all of his claims were now moot and any subsequent challenges to USCIS's denial should be filed in this Court. *Id.* at *6, *10–11. Plaintiff appealed the Southern District's decision to the Second Circuit, which affirmed the district court. *Saleh II*, 2021 WL 4978574, at *3. While the appeal was pending, USCIS reissued its denial of Plaintiff's N-400 application on alternate grounds, alleging Plaintiff failed to disclose contacts with his distant relative who was in Al-Qaeda. (Compl., Dkt. 1, ¶¶ 5, 128.) USCIS represented to both Plaintiff and the Second Circuit that this denial constituted its "final administrative denial," and advised Plaintiff that he could seek relief

in this Court. *See Saleh II*, Dkt. 52-2, at 6 ("This decision constitutes a final administrative denial of your naturalization application. To request judicial review of this final determination, file a petition for review in the United States District Court having jurisdiction over your place of residence. See INA 310(c).").

**III.    Procedural History**

On October 28, 2021, Plaintiff commenced this suit pursuant to 8 U.S.C. § 1421(c)[2], seeking *de novo* review of his N-400 application denial. (Compl., Dkt. 1, ¶ 1.) Plaintiff sought declarations that his N-400 application was reviewed with unreasonable delay and that CARRP violates the INA, APA, Naturalization Clause of the United States Constitution, and Fifth Amendment to the United States Constitution. (*Id.* at 76.) Plaintiff also sought a declaration that MAP—a policy that considers multiple absences from the U.S. of less than six months as potentially breaking an applicant's continuous residence—violates the INA and APA. Finally, Plaintiff sought injunctions prohibiting USCIS from enforcing both CARRP and MAP. (*Id.*)

On February 25, 2022, Defendants filed a motion to dismiss all of Plaintiff's claims. (Dkt. 24.) By Memorandum & Order, on September 28, 2022, the Court dismissed Plaintiff's APA claims, but allowed Plaintiff's challenges to the N-400 denial, CARRP, and MAP to proceed under § 1421(c) and the Naturalization Clause. *Saleh v. Garland*, 21-CV-5998 (PKC), 2022 WL 4539475, at *6–7 (E.D.N.Y. Sept. 28, 2022). The Court then granted Defendants' request for discovery. (10/13/2022 Docket Order.)

---

[2] 8 U.S.C. § 1421(c) corresponds to Section 310(c) of the INA. The Section provides, in relevant part: "A person whose application for naturalization . . . is denied, after a hearing before an immigration officer . . . may seek review of such denial before the United States district court for the district in which such person resides . . . . Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application." 8 U.S.C. § 1421(c).

On February 10, 2023, the parties requested to stay discovery while "settlement discussions [took] place[.]" (Dkt. 44, at 1.) On March 7, 2023, Defendants requested a settlement conference with a Magistrate Judge (Dkt. 45, at 4), and the Court referred the matter to the Honorable Lois Bloom the following day (3/8/2023 Docket Order). On March 21, 2023, Magistrate Judge Bloom reported that the parties were unable to settle the case after three telephone conferences. (*See* 3/16/2023 Docket Order; 3/20/2023 Docket Order; Dkt. 47.)

Just three days after the final settlement conference, Defendants notified the Court that USCIS intended to reopen and further adjudicate Plaintiff's N-400 application. (Dkt. 48.) Plaintiff objected to Defendants' motion, arguing that the Court had exclusive jurisdiction over his N-400 application and therefore USCIS could not reopen its adjudication. (*See* Dkt. 49.) However, Plaintiff recognized that USCIS's independent approval of Plaintiff's N-400 application could moot his challenges to CARRP and MAP. (*See id.*) Plaintiff vowed to "challenge [] CARRP to the end" after it had "destroyed [his] life . . . for more than 20 years." (*Id.*) The Court agreed with Plaintiff that it had exclusive jurisdiction over his N-400 application but "[n]evertheless, in the interest of expeditiously providing Plaintiff with his requested relief[,] . . . permit[ted] USCIS to reopen the application and grant it."[3] (3/29/2023 Docket Order.)

Plaintiff became a naturalized citizen on April 7, 2023. (Dkt. 51, at 1.) On April 16, 2023, Plaintiff reiterated his belief that USCIS had no jurisdiction over his N-400 application and requested that the Court find his citizenship certificate "[n]ull and [v]oid." (Dkt. 50, at 1.) Plaintiff

---

[3] The Court notes that it erred in the March 29th Docket Order when it concluded that it had exclusive jurisdiction over Plaintiff's N-400 application. (*See* 3/29/2023 Docket Order ("The Court recognizes that it has exclusive jurisdiction over Plaintiff's naturalization application.").) Rather, courts in this Circuit hold that USCIS has *concurrent* jurisdiction with district courts over N-400 applications during the pendency of Section 1421(c) proceedings. *See infra* Discussion Section I.A.

5

alternatively asked the Court to "order the defendants to re-issue [his] certificate of naturalization Nunc Pro Tunc [on] the same day [as] the USCIS final denial . . . [on] 8/31/20" because his lack of citizenship between August 2020 and April 2023 had delayed his eligibility to run for Congress. (*Id.* at 1–3.)  Plaintiff also alleged that Defendants' delays and denials have harmed his prospects of securing visas for six siblings and a potential "overseas" bride. (*Id.* at 3.)  Plaintiff sought "an official apology" from Defendants for making him "suffer for more than 20 years," explaining that Plaintiff will have received nothing to compensate him for Defendants "mak[ing] his life [] Hell" if he receives neither *nunc pro tunc* relief nor an official apology. (*Id.* at 3.)  Plaintiff further requested to add a *Bivens* claim against government officials. (*Id.*)  On April 20, 2023, Defendants moved to dismiss Plaintiff's remaining claims, which challenged CARRP under the INA and Naturalization Clause. (Dkts. 52, 56.)

On May 11, 2023, the Court rejected Plaintiff's requests for *nunc pro tunc* relief, an official apology, and the addition of the *Bivens* claim. (5/11/2023 Docket Order.)[4]  The Court subsequently dismissed the case, finding that Plaintiff lacked proof of any present or future personal injury to sustain his CARRP claims because he is naturalized and therefore no longer subject to the policy. (*See* 5/11/2023 Order.)

On May 15, 2023, Plaintiff filed a letter that the Court liberally construes as two motions: (1) a motion for reconsideration; and (2) a motion for costs, fees, and expenses. (Dkt. 58.)  First, Plaintiff seeks reconsideration of the Court's determination that USCIS had the authority to re-adjudicate Plaintiff's N-400 application, citing the Court's reference to its exclusive jurisdiction

---

[4] The Court issued two orders on May 11, 2023; the first order ruled on the parties' outstanding letters (Dkts. 50, 51, 53, 54, 56) and the second order dismissed the case. The Court will refer to the first order as "5/11/2023 Docket Order" and the order dismissing the case as "5/11/2023 Order" throughout this Memorandum & Order.

6

over the application in the March 29, 2023 Docket Order. (*Id.* at ECF[5] 2; *see also* Dkt. 62, at 1–2.) Second, Plaintiff argues that the Court failed to rule on his claims concerning MAP in the May 11, 2023 Order and therefore must reconsider them now. (Dkt. 58, at ECF 1 ("The [C]ourt overlooked in the order, dated on 5/1[1]/23[,] whether the USCIS regulation of multiple absence[s] outside the USA of the [naturalization] applicant[] . . . is legal or illegal[.]"); *see also* Dkt. 62, at 2.) Third, in his motion for costs, fees, and expenses, Plaintiff seeks "about $10,000[.]" (Dkt. 58, at ECF 3.) On May 16, 2023, Plaintiff filed a notice of appeal. (Dkt. 59.)[6] On May 30, 2023, Defendants submitted their opposition to Plaintiff's motions. (Dkt. 61.) On June 3, 2023, Plaintiff replied to Defendant's opposition, further explaining, *inter alia*, that the $10,000 figure encompasses everything Plaintiff has incurred after USCIS's denial of his N-400 application on August 31, 2020, including his $402 filing fee in this Court and his $505 fee on appeal. (*See* Dkt. 62, at 4.)

**LEGAL STANDARDS**

**I.   Motion for Reconsideration**

"Reconsideration is 'an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce and judicial resources.'" *Hoeffner v. D'Amato*, --- F. Supp. 3d ---, 2023 WL 2632501, at *1 (E.D.N.Y. 2023) (quoting *Butto v. Collecto Inc.*, 845 F. Supp. 2d 491, 494 (E.D.N.Y. 2012). "[A] party may move for reconsideration and obtain relief only when

---

[5] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[6] The Court notes that Plaintiff's motion for reconsideration rendered the Court's dismissal of Plaintiff's case as "not final" for purposes of an appeal. *Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710, 717 (2019) ("A timely motion for reconsideration filed within a window to appeal does not toll anything; it 'renders an otherwise final decision of a district court not final' for purposes of appeal." (quoting *United States v. Ibarra*, 502 U.S. 1, 6 (1991))).

the party identifies an 'intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 108 (2d Cir. 2013) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked[—]matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Cho v. Blackberry Ltd.*, 991 F.3d 155, 170 (2d Cir. 2021) (citation omitted); *see also LPD N.Y., LLC v. Adidas Am., Inc.*, 295 F. Supp. 3d 275, 284 (E.D.N.Y. 2017) ("In order to prevail on a motion for reconsideration, 'the moving party must demonstrate that the Court overlooked controlling decisions or factual matters that were put before the Court on the underlying motion.'" (quoting *Lichtenberg v. Besicorp. Grp. Inc.*, 28 F. App'x 73, 75 (2d Cir. 2002))).

## II. Motion for Attorney's Fees

The Equal Access to Justice Act ("EAJA"), provides, in relevant part:

> Except as otherwise specifically provided by statute, a court shall award to a *prevailing party* other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (emphasis added). "To be considered a 'prevailing party,' a plaintiff must have achieved a judicially-sanctioned material alteration of the legal relationship between the parties." *McKay v. Barnhart*, 327 F. Supp. 2d 263, 266 (S.D.N.Y. 2004) (citing *Roberson v. Giuliani*, 346 F.3d 75, 79 (2d Cir. 2003) (interpreting *Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001))); *see also IME WatchDog, Inc. v.*

*Gelardi*, No. 22-CV-1032 (PKC) (JRC), 2022 WL 16636766, at *2 (E.D.N.Y. Nov. 2, 2022) ("[A] 'prevailing party' is one who has favorably effected a 'material alteration of the legal relationship of the parties' by court order." (quoting *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 102 (2d Cir. 2009))).

## DISCUSSION

Plaintiff seeks reconsideration of the Court's May 11, 2023 Docket Order and Order on two grounds: (1) USCIS had the authority to re-adjudicate Plaintiff's N-400 application; and (2) the Court failed to rule on his claims concerning MAP. Plaintiff separately seeks to recover costs, fees, and expenses, totaling "about $10,000," that he allegedly incurred as a result of these proceedings. The Court considers each of these issues in turn, and finds, as discussed below, that none have merit.

**I.     Plaintiff's Motion for Reconsideration Fails in Its Entirety**

**A.     USCIS Had Jurisdiction to Re-Adjudicate Plaintiff's Naturalization Application**

Plaintiff's request to have the Court re-approve his naturalization petition is denied because Plaintiff's suit never stripped USCIS of the authority to re-adjudicate Plaintiff's N-400 application. The Court erred previously when it stated that it had exclusive jurisdiction over Plaintiff's § 1421(c) petition. (*See* 3/29/2023 Docket Order.) Although federal courts have generally reached consensus that the Court has exclusive jurisdiction over § 1447(b) petitions, they are split on whether the Court has exclusive jurisdiction over § 1421(c) petitions. *See* Claudia Catalano, Annotation, When Naturalization Case Becomes Moot Under Immigration and Nationality Act (8 U.S.C.A. § 1101 et seq.), 68 A.L.R. Fed. 3d Art. 4 (2022), §§ 28–30. District courts in this Circuit hold that the Court has concurrent jurisdiction with USCIS over § 1421(c) petitions. *See Gizzo v. I.N.S.*, 510 F. Supp. 2d 210 (S.D.N.Y. 2007) (holding that a plaintiff's § 1421(c) appeal of his

9

naturalization denial was mooted by USCIS's decision to vacate INS's prior determination and reconsider plaintiff's N-400 application); *Jimenez v. U.S. I.N.S.*, No. 02-CV-9068 (RWS), 2003 WL 22461806, at *1–2 (S.D.N.Y. Oct. 30, 2003) (same); *Jacobo v. Reno*, No. 99-CV-4609 (SHS), 1999 WL 34768747, at *1 (S.D.N.Y. Oct. 20, 1999) (same).  Thus, the Court finds that USCIS had concurrent jurisdiction to approve Plaintiff's naturalization petition, even as his § 1421(c) claim was pending before this Court, and Plaintiff's Certificate of Naturalization is therefore valid. Although Plaintiff points to cases in other circuits that have ruled differently (*see* Dkt. 62, at 1), these cases are not controlling and do not bind this Court.  *See Pfohl Bros. Landfill Site Steering Comm. v. Allied Waste Sys., Inc.*, 255 F. Supp. 2d 134, 151 (W.D.N.Y. 2003) (explaining that district courts are "not bound to follow . . . non-circuit caselaw"); *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) ("[R]econsideration will generally be denied unless the moving party can point to *controlling* decisions or data that the court overlooked[.]" (emphasis added)). Thus, the Court denies Plaintiff's motion to reconsider the Court's refusal to re-approve his naturalization petition.

      **B.**      **The Court Properly Considered and Dismissed Plaintiff's MAP Challenge**

Plaintiff's request for reconsideration of his MAP claim is also denied.  Plaintiff argued that the Court's May 11, 2023 dismissal failed to consider his MAP claim entirely.  (*See* Dkt. 58, at ECF 1 ("The court overlooked . . . whether [MAP] is legal or illegal as it was one of the two main grounds of denial of my N-400 application[.]"); Dkt. 62, at ECF 2 ("No doubt, the court overlooked the issue of [MAP], so the court should rule on the multiple absence issue as . . . the multiple absence issue is not part of any class action case.").)  But Plaintiff misunderstands the record.  Plaintiff's MAP claims under both the APA and INA were previously considered and dismissed by the Court.

10

Plaintiff initially sought a declaratory judgment that MAP is illegal and an injunction against USCIS's enforcement of the policy under both the APA and INA. (Compl., Dkt. 1, at 76.) *See also Saleh*, 2022 WL 4539475, at *2 (liberally construing Plaintiff's MAP claims as being brought pursuant to the INA and APA). The Court dismissed all of Plaintiff's APA claims in its September 28, 2022 Memorandum & Order. *Saleh*, 2022 WL 4539475, at *6. The Court then dismissed Plaintiff's remaining INA claims for lack of standing in its May 11, 2023 Order. (5/11/2023 Order.) The Court's dismissal is especially clear when read in conjunction with its September 28, 2022 Memorandum & Order. That Memorandum & Order identified Plaintiff's MAP claims as "requests for declaratory judgment and injunctive relief relating to his § 1421(c) claims." *Saleh*, 2022 WL 4539475, at *7; *see also id.* at *2 ("Plaintiff seeks a declaration that . . . the USCIS policy of treating an applicant's multiple absences of less than six months from the United States as potentially breaking an applicant's continuous residence . . . violates the INA and the Administrative Procedure Act[.]"). Hence, when the Court subsequently held in its May 11, 2023 Order that Plaintiff no longer had standing sufficient to seek any "injunctive or declaratory relief," that holding necessarily applied to Plaintiff's MAP claims. (May 11, 2023 Order.) Plaintiff does not raise any "intervening change of controlling law" or "new evidence" that would render the Court's prior dismissals erroneous and thus his motion for reconsideration fails. *See Hicksville Water Dist. v. Jerry Spiegel Assocs.*, No. 19-CV-6070 (PKC) (RML), 2022 WL 4072683, at *2 (E.D.N.Y. Sept. 2, 2022) (citations omitted). Accordingly, Plaintiff has not met the standard required for reconsideration and his motion is denied.

## II.     Plaintiff is Not a Prevailing Party and Cannot Recover Any Fees or Costs

Finally, Plaintiff's request to recover costs, fees, and expenses is denied because Plaintiff is not a "prevailing party" as is required for recovery under the EAJA. Moreover, Plaintiff is

11

separately precluded from recovering nearly all of the costs, fees, and expenses he seeks because he is a *pro se* litigant.

Under the EAJA, only a "prevailing party" may recover § 2412(a) costs or § 2412(d) fees and expenses. 28 U.S.C. § 2412(a)(1), (d)(1)(A). Plaintiff appropriately looks to *Buckhannon*'s definition of a "prevailing party" and correctly notes that it requires there to have been "a material alteration" in the parties' legal relationship (Dkt. 58, at ECF 3), but Plaintiff overlooks *Buckhannon*'s added requirement that this alteration be "judicially sanctioned." *See Buckhannon*, 532 U.S. at 605 (referring to a "*judicially sanctioned* change in the legal relationship of the parties" (emphasis added)); *Ma v. Chertoff*, 547 F.3d 342, 344 (2d Cir. 2008) (holding that *Buckhannon*'s definition of "prevailing party," including the requirement that "change must . . . be judicially sanctioned[,]" applies to the EAJA). Nevertheless, the Court discerns two arguments Plaintiff makes that arguably support finding a "judicially sanctioned" change, both of which fall short.

Plaintiff first contends his N-400 application approval was "judicially sanctioned" by the Court's March 29, 2023 Order staying proceedings and discovery, which he claims granted USCIS "permission for the defendants to reopen [Plaintiff's] N-400 [a]pplication." (Dkt. 58, at ECF 3.) But as today's Memorandum & Order clarifies, USCIS never lost jurisdiction over Plaintiff's N-400 application, so USCIS needed no "permission" to make a re-determination. (*See supra* Discussion Section I.A.) Moreover, when Defendants requested the stay, USCIS was already "in the process of reopening and approving" Plaintiff's N-400 application without any prior direction or "permission" from the Court. (Dkt. 48, at ECF 1.) Therefore, the Court's March 29, 2023 Order granting the stay did not grant Plaintiff any relief, let alone "actual relief on the merits" required to render Plaintiff a "prevailing party." *See Melamud v. U.S. Dep't of Homeland Sec.*, No. 06-CV-1698, 2007 WL 2870978, at *2 (D. Conn. Sept. 25, 2007).

12

Alternatively, Plaintiff alleges his N-400 application's approval was "judicially sanctioned" because it would "never" have happened but for his appeal to the Court. (Dkt. 58, at ECF 3 ("[W]ithout . . . my filing the case and my going and back [sic] for few years in the courts, I will never get approval . . . .").)  However, the fact that litigation prompts a defendant to grant a plaintiff's requested relief, on its own, does not transform a defendant's actions into "judicially sanctioned" relief.  *See Buckhannon*, 532 U.S. at 605; *Melamud*, 2007 WL 2870978, at \*3 (holding that a naturalization applicant that received an approval shortly after suing USCIS was not a "prevailing party" even though USCIS had informed the applicant that suing was the only way the plaintiff would receive a timely determination); *Abiodun v. McElroy*, No. 01-CV-0439 (LAK), 2002 WL 31999342, at \*1 (S.D.N.Y. Mar. 6, 2002) (applying *Buckhannon* to explain that a party is not "prevailing" under the EAJA merely because their "lawsuit was a catalyst that led to their obtaining [] relief").  Accordingly, while the Court sympathizes with Plaintiff for the seemingly avoidable delays and litigations that have significantly burdened him in his path to citizenship, Plaintiff's argument is legally inapposite.  Even assuming Plaintiff's N-400 application would not have been approved but for this lawsuit, Plaintiff still would not have "prevailed" under the EAJA. *See Melamud*, 2007 WL 2870978, at \*3.

Because Plaintiff is not a "prevailing party," he cannot recover any costs, fees, or expenses under the EAJA.  But notably, even if Plaintiff were a "prevailing party," nearly all of his $10,000 in requested relief would be unattainable.  As a *pro se* litigant, he is precluded from recovering attorney's fees and has not demonstrated he falls within the narrow set of circumstances that allow *pro se* plaintiffs to recover for other § 2412(d) fees. *See SEC v. Price Waterhouse*, 41 F.3d 805, 808–09 (2d Cir. 1994) (holding that a *pro se* plaintiff can never recover attorney's fees and can only recover § 2412(d) fees and expenses that stem from a "loss of income" or other "consequential

expenses (in the nature of hiring others to replace him in other activities)"). Plaintiff cannot recover for tasks for which attorneys would typically be compensated, including the "copying and printing and posting and many discoveries" that Plaintiff asserts contributed to his largely unsubstantiated request to recover $10,000. (Dkt. 62, at 4.) Thus, even if Plaintiff were a "prevailing party"—which he is not—the Court would still be unable to award Plaintiff any attorney's fees.

In sum, Plaintiff's request for fees is denied in full.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for reconsideration and costs is denied in its entirety.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: July 26, 2023
       Brooklyn, New York

14